IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATIENCE O'DOWD,

        Plaintiff,

  vs.                              CIVIL NO.  99-154 RAP/LFG

INTEL CORPORATION,
a California corporation,

        Defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO EXTEND NUMBER OF DEPOSITIONS BY PLAINTIFF

THIS MATTER is before the Court on Plaintiff Patience O'Dowd's ("O'Dowd") Motion to Extend Number of Depositions by Plaintiff [Doc. 73].  O'Dowd served her motion approximately ten days prior to the close of discovery.  Due to the district's motion practice rule, the motion could not be filed until completion of briefing.  Thus, in the interim, the deadline for discovery elapsed.

O'Dowd requests that the Court modify its Initial Pretrial Report by authorizing her to take nine additional depositions.  She argues that the proposed depositions would not duplicate prior discovery and that each deposition is necessary to explore her proposed claims of retaliation.  Intel Corporation ("Intel") opposes the motion and notes that good cause has not been shown under Fed. R Civ. P. 26(b)(2) to extend the deposition limit beyond the maximum authorized by the Rule.

### Analysis

Wide-spread discovery abuses, escalating costs of litigation and resulting delays in the final disposition of cases compelled Congress to take prompt and decisive action to curb litigation excesses.  Courts and Congress were concerned with problems caused by improper litigation tactics.

Discovery was often used as a hammer intended more to beat one's opponent into submission than a method to discover facts relevant to the claims or defenses. Wave-after-wave of written discovery and the improper use of multiple, protracted and costly depositions greatly increased the costs of litigation, contributed to docket congestion, and resulted in significant delays in the resolution of a lawsuit.

Congress responde to those kinds of abusive litigation tactics with the adoption of the Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.* ("CJRA"), and the subsequent revision of the Federal Rules of Civil Procedure. Both the statute and rule revisions were intended to address the dual problems of cost and delay. Parties are no longer able to engage in carte blanche, unrestricted discovery.

So as to reduce the possibility that a party will engage in needless, abusive or expensive discovery, the rules prohibit any discovery at all until the Court approves a case management plan. Fed. R. Civ. P. 26(d). Moreover, the rules impose specific limits on both the numbers of depositions authorized and the numbers of interrogatories which may be served. Rule 30 limits each side to ten depositions; similar restrictions are placed on the number of interrogatories. Rule 33 provides that no more than twenty-five interrogatories, including sub-parts, may be served without leave of court. The revised rules, specifically 33(d), also call for limitations on the length of depositions so as to lessen the burdens on the deponent and the costs to the parties.

The CJRA and the federal rules contemplate court-managed discovery and impose significant limitations on the discovery process. This is consistent with the dual goals of the CJRA: 1) to reduce costs of litigation; and 2) to expedite the ultimate disposition of a case. The CJRA contemplates court-managed discovery, imposition of fixed and firm case management deadlines, and

the creation of target disposition dates to ensure that a case is brought to final disposition within a specific and relatively brief amount of time.

Under the CJRA and the Federal Rules of Civil Procedure, parties must proceed cautiously and with circumspection with their discovery. Discovery choices and decisions are no longer the attorney's sole prerogative, but, rather, discovery must now be approved by the court. The court is required to balance a party's right to information with the opposing party's right to be free from vexatious, expensive and intrusive discovery demands. Because the parties no longer have unlimited numbers of depositions at their disposal, the parties must carefully analyze their discovery needs and utilize their allotted depositions carefully. So, too, with written discovery. Because the procedural rules impose limits on the numbers of questions that may be asked, counsel must carefully formulate the precise questions for which they need responses. These limitations were not intended to tie an advocate's hands, or unfairly limit the advocate's ability to learn the relevant facts. Rather, they are intended to require the advocate to carefully consider the expenses involved, and to make wise and prudent choices in terms of a client's discovery dollars and the client's needs for information. The rules also impose a sense of fairness in the process by lessening the opportunities for abusive practices. The rules contemplate some degree of flexibility, and strict limits are not rigidly imposed without consideration of the parties' needs.

In this case, O'Dowd has been anything but circumspect and cautious in her discovery requests. Indeed, her Provisional Discovery Plan called for her to take 100 depositions, 100 requests for production, 100 requests for admission and 100 interrogatories. These requests are startling and could scarcely be made even in the most complex of lawsuits. This is the kind of abusive discovery which both the revised rules and CJRA sought to prevent. While this case is important and the issues

serious, it still does not fall within the "complex" category contemplated by the district's Civil Justice Expense and Delay Reduction Plan. There is simply no legitimate reason to take so many depositions in a routine Title VII case.

The Court liberally authorized O'Dowd to take the maximum amount of discovery authorized by the rules. The choices on how to use these depositions were left up to O'Dowd. No limitations were imposed on "informal" discovery. Indeed, with the concurrence of opposing counsel, informal interviews have been scheduled. O'Dowd used her allotted depositions, and now wishes to "reload" and take an additional nine depositions. Intel argues "the depositions she has taken have not demonstrated any retaliation [by the employer in failing to promote her because she filed an EEOC complaint]. Most of the hiring managers did not even know of Plaintiff's lawsuit or charge against Intel at the time they made the hiring decisions." Thus, Intel implies that after O'Dowd has used all of her allotted depositions, she still lacks evidence to support her allegations.

The Court's order simply allotted the parties a specified number of depositions. O'Dowd was free to utilize them however she deemed appropriate. She was free to take the deposition of any person whom she believed could provide relevant information on the matters in controversy. If O'Dowd used her allotted depositions unwisely and failed to secure evidence helpful to the prosecution of her case, Intel should not be burdened with additional financial or time constraints because of those litigation decisions.

Granting O'Dowd's request would necessitate reopening discovery and modifying all other case management deadlines. This could significantly affect the Court's ability to bring this matter to a conclusion within a reasonable amount of time, thus, violating the Court's responsibilities under the district's Civil Justice Expense and Delay Reduction Plan.

The Court concludes that O'Dowd failed to demonstrate good cause for the taking of nine more depositions. Accordingly, O'Dowd's request is denied.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEYS FOR PLAINTIFF:
Pia Gallegos, Esq.
Chris S. Key, Esq.

ATTORNEYS FOR DEFENDANT:
Duane C. Gilkey, Esq.
Mary A. Woodward, Esq.