IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATIENCE O'DOWD,

     Plaintiff,

v.                                          Civ. No. 99-0154 RLP/LFG

INTEL CORPORATION,

     Defendant

MEMORANDUM OPINION AND ORDER

Plaintiff Patience O'Dowd sued her employer Defendant Intel Corporation for sex discrimination and retaliation in violation of Title VII.  Before the court are Intel's Motion for Summary Judgment  and Motion to Strike Affidavits and Portions of Affidavits.

BACKGROUND

O'Dowd has been employed at Intel since 1987 as an engineer. Among other things Intel designs, manufactures, and markets microcomputer components and related products.  In 1997, Intel underwent a reorganization in one or more departments.  The purpose of the reorganization was to reduce personnel from 2,291 to 1,756 employees.  Middle management employees were to decrease from approximately 117 to 54.  Defendant Intel's Memorandum of Law  in Support of Summary Judgment [Doc. 120] (Intel's Memorandum), Statement of Undisputed Material Facts, ¶ 3.

At the time of the reorganization, O'Dowd held the middle-management position of Group Leader ("GL") in the Automated Wet Stations ("AWS") engineering group in "Fab

9."[1]  Fab 9 was one of the departments or areas being reorganized.[2]  At the time of the reorganization, O'Dowd was a Grade 7.  Intel sought to place those individuals who worked in reorganized departments by a two-tiered process, "Staff Plus One" and "Staff Plus Two."  According to O'Dowd "Staff Plus One" is like being an NFL first-round draft pick and "Staff Plus Two" is not as desirable.  O'Dowd was not selected for "Staff Plus One;" that is, she was one of approximately 18 men and women who were not placed in the upper levels of management.   Intel asserts that no individual was to be promoted in the reorganization and would retain their grade-level salary and benefits.  Thus, O'Dowd as GL was a grade 7 and remained a grade 7 after reorganization, even though she contends it is a lesser job.   The court accepts her contention as true.

O'Dowd's Title VII sex discrimination claim is based on Intel's failure to place her in the Staff Plus One selection.  She asserts that she was more qualified than many who were selected in Staff Plus One, male or female.  O'Dowd's retaliation claim is based on

---

[1]  The court assumes that "Fab" is an abbreviation of fabrication.  The parties' memoranda in support of, and in opposition to, summary judgment are replete with acronyms, abbreviations,  and titles of various positions and departments, most of which are not defined by the parties and comprehensible only to Intel employees.

[2]  The parties appear to dispute the extent, the purpose, and the results of the 1997 reorganization.  It is unclear whether much of this purported dispute is "material," *i.e.*, "outcome determinative."  *See  Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court is greatly hampered by O'Dowd's complete failure to follow this district's local rules, which require the party responding to a motion for summary judgment to identify with particularity the "movant's fact that is disputed."  *See* D.N.M.LR-Civ. 56.1(b).  Instead of submitting her response in proper form by responding to Intel's 83 paragraphs of "Undisputed Material Facts," O'Dowd submitted 84 paragraphs of her own "Disputed Material Facts" without reference to Intel's statement. O'Dowd's ¶¶ 85-93 reference which facts she disputes in excruciating detail with mostly indecipherable record references.

the fact that after she filed an EEOC charge and thereafter she was not interviewed for a position she desired and alleged harassment by five managers or supervisors at Intel.[3]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only in cases where, looking at the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed.R.Civ.P. 56. The movant bears the burden of establishing that no genuine issue exists as to any material fact. *National Union Fire Ins. Co. v. Emhart Corp.*, 11 F.3d 1524, 1528 (10th Cir. 1993).

Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *Thrifty Rent-A-Car Systems, Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1194 (10th Cir. 1994). Only material factual disputes preclude summary judgment; factual disputes about immaterial items are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Materiality" is defined by the substantive law. *Id.* Only disputes over facts which are outcome-determinative will preclude entry of summary judgment. *Id.* "Facts" do not include "unsubstantiated allegations," *see Phillips v. Calhoun*, 956 F.2d 949, 951 (10th Cir. 1992), nor "optimistic conjecture, unbridled speculation, or hopeful surmise," *see Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 479 (1st Cir. 1993). A party's "belief" or "feeling," standing alone, is insufficient to preclude summary judgment. *See, e.g., Faulkner v. Super*

---

[3] In April, 2000, O'Dowd was offered, and accepted, the position of Diffusion Group Leader. She currently supervises 18-20 employees and remains a Grade 7.

*Valu Stores, Inc.*, 3 F.3d 1419, 1426 n.4 (10th Cir. 1993).  In sum, Fed.R.Civ.P. 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element of her case and on which she will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  With these standards in mind, the court now turns to the substantive law to define what facts are material.

I.     TITLE VII SEX DISCRIMINATION CLAIM

        To prevail on her claim of sex discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position she applied for; and (4) she was treated less favorable than others not in the protected class.  *Burlington v. United Air Lines*, 186 F.3d 1301, 1315 (10th Cir. 1999).  Once the plaintiff establishes her prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Once articulated, plaintiff bears the burden of showing the reason was pretextual. *Id.*

> If the plaintiff succeeds in showing a prima facie case and presents evidence that the defendant's proffered reason for the employment decision was pretextual--*i.e.*, unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial.

*Randle v. City of Aurora*, 69 F.3d 441, 450 (10th Cir. 1995).

        As recently articulated by the United States Supreme Court:

> [A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is

false, may permit the [jury] to conclude that the employer unlawfully discriminated.

*Reeves v. Sanderson*, -- U.S. --, 120 S.Ct. 2097, 2109 (2000).

An employer is entitled to summary judgment under two circumstances. First, if the record conclusively shows the employer had a nondiscriminatory reason for the employment decision. *Id*. Second, if the plaintiff creates "only a weak issue of fact as to whether the employer's reason was untrue *and* there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id*. (emphasis added).

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Id*.

A.   Prima Facie Case

The court assumes without deciding that O'Dowd has established a prima facie case of sex discrimination.[4]

B.   Facially Nondiscriminatory Justification for Employment Action

As indicated earlier, O'Dowd was not selected for the Staff Plus One placement. There were two Group Leader positions available in Staff Plus One and various Shift Manager and Shift Coordinator positions. Two other women were placed in the Group Leader positions and men and women were placed in the Shift Manager and Shift

---

[4] Because of this assumption, affidavits and exhibits in support of O'Dowd's prima facie case are not considered, nor is Intel's Motion to Strike as to those affidavits.

Coordinator positions.  Intel states that after it selected another woman for one of the Group Leader positions,  O'Dowd was not placed in any other Group Leader position because she did not have the area-specific skills and experience to place her ahead of the other candidates in the pool.  There was also concern about O'Dowd's abilities to supervise 100-200 employees, as required in the shift manager or shift coordinator positions.  *See* Intel's Memorandum at 26 and record citations therein.  "During the reorganization, she was scored low by her direct supervisor in the categories of ability to supervise over 100 people and knowledge of personnel guidelines.  For these reasons, Intel decision makers did not consider Plaintiff to be qualified for positions where she would be supervising large groups . . ."  *Id.*

C.    Pretext

O'Dowd's "Statement of Disputed Material Facts," Opposition to Motion for Summary Judgment (Opposition Memorandum), ¶¶ 16-33 comprise her proof of pretext. In summary, she contends that she was better qualified than either of the two women who were given Group Leader positions; she was better qualified than any of the men who were placed in Shift Manager or Shift Coordinator positions; some of the men who were placed in those positions had no more experience than she did in managing large groups of employees; O'Dowd was never told of any complaints about her, despite Intel's written policy of addressing concerns promptly and directly; two former employees complained of sex discrimination; Intel fell short of its goals in placing women in management positions; and Intel sets artificially low goals for female employees.

6

In support of her contentions, O'Dowd offers her own Affidavit and references various exhibits attached to her own or to Intel's memoranda.   As to the two women who were placed as Group Leaders, Ms. Wood and Ms. Welton-Kidder, O'Dowd argues she was technically superior, had more depth and breadth of experience with different processes, and was scored higher than either of the two women in many areas.  She also notes that neither Wood nor Welton-Kidder had experience supervising 200 plus employees.

Most of O'Dowd's arguments are based on her own self-assessment and self-comparison to the other candidates.  For example, she compares her performance review to Ms. Wood's or Ms. Welton-Kidder's performance reviews and reaches the conclusion that she is superior in many respects.  A comparison of O'Dowd's numerical ratings to the other women's numerical ratings indicates slight differences in various areas, with no obvious evidence of the superiority of one candidate over another.

"An employee's own opinions about [her] qualifications [do not] give rise to a material factual dispute."  *Simms v. Oklahoma*, 165 F.3d 1321, 1329 (10th Cir.), *cert. denied*, -- U.S.--, 120 S.Ct. 53 (1999) (internal quotation marks omitted).[5]  It is undisputed that O'Dowd is technically qualified for some, if not many, positions at Intel.  This technical expertise, however, does not translate into superiority in all criteria necessary to be a

_____

[5] Intel has moved to strike much of O'Dowd's Affidavit pursuant to Fed.R.Civ.P. 56(e).  Since that Rule and applicable case law does not allow the court to consider immaterial, conclusory, self-serving, or speculative material when ruling on motions for summary judgment, *see supra*, pages 3-4, Intel's motion is redundant as to those complaints.  As noted in the text, O'Dowd's self-assessment of her capabilities is not relevant to her claims of sex discrimination and those portions of her Affidavit are not considered by the court.

manager, or supervisor, of other employees.  Such an evaluation necessarily involves subjective criteria.  Contrary to O'Dowd's assertions, the use of subjective criteria is not necessarily evidence of pretext.  *Id.* at 1330.  A court's role is to "prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments."  *Id.*  Nothing that O'Dowd argues even raises an inference that she was discriminated against  because of her sex.

Next, O'Dowd argues that she was better qualified than any of the men who were placed in the Shift Manager or Shift Coordinator positions.  She again relies on her own qualifications,  the numerical test scores individuals received from various managers, and the fact that some of the men placed had no more supervisory experience than did she.  She also contests Roger Rodriguez's concerns that she had no human resource background and that she lacked leadership skills.

Both parties rely on what are apparently Intel's matrices to show managers' ratings of various employees for the 1997 reorganization.  *See* Intel's Exhibit J; O'Dowd's Exhibits 12A-12E.  Neither party authenticated these exhibits, but since neither party objected to them and both parties rely on the data contained therein, the court will review them.  Various men and women were considered for the Shift Coordinator and Shift Manager positions in the December, 1997 reorganization.  It appears that all ratings were based on the immediately preceding three and one-half years, from April, 1995 to October, 1997.  They were rated on a 1 to 5 scale (with 5 being the top) on a variety of technical and management skills.

8

O'Dowd was ranked higher than some of her colleagues in some areas and lower than some of her colleagues in other areas.   She was ranked as a "2" in three areas:  (i) ability to successfully manage more than 100 employees; (ii)  knowledge of human resources guidelines; and (iii) possible future manufacturing manager.  O'Dowd's Exhibit 12A; Intel's Exhibit J.  She was given a "3" in the area of communication skills; most of her colleagues received scores of 4.  O'Dowd claims that the scores themselves are evidence of pretext.

> "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."

*Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999) (citation omitted).

In reviewing these exhibits, no pattern of preference or discrimination is discernible. In general, these individuals -- both men and women -- possessed similar skill ratings in a variety of areas.  These differences in scores appear to be the norm among a pool of similarly qualified individuals.  Most of O'Dowd's evidence of pretext is her assertion that she is superbly qualified to be a manager and that her employer was wrong when it deemed her not ready to manage 100 plus employees.  In a pretext case, "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance."  *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1209 (10th Cir. 1999) (internal quotation marks and citation omitted).  Thus, the relevant inquiry in pretext is not whether the employer was wrong in its evaluation of

O'Dowd's lack of managerial skills, but whether that evaluation was genuine or pretextual. *Id.*

The record evidence does not support an inference of pretext.  In her Opposition Memorandum, O'Dowd attached several performance reviews, Exhibits 21A to 21M.  Her supervisors consistently advised her to improve her written and oral communication skills, to increase her technical skills, and to be more effective in time management.  She was advised to "keep personalities separate from issues," Exhibit 21G, to learn how to be open to input from others and to listen to others' positions, *id.* & 21H.  She was also advised she had made errors in Intel's human resources procedures, Exhibit 21K.  In total,  these reviews reflect a valued, perhaps above-average employee, but one who needed more technical expertise and better communication skills to advance.  Her numerical ratings are not at odds with her performance reviews.

As further evidence of pretext, O'Dowd complains that Roger Rodriguez, Human Resources Manager distinguished between male and female employees at Intel and never discussed with O'Dowd any concerns he had about her management abilities, contrary to Intel's company policy.  O'Dowd generally asserts that Intel is discriminatory in practice. *See* Opposition Memorandum, ¶¶ 23-33.

In support of her allegations of discriminatory conduct by Mr. Rodriguez, O'Dowd submits two affidavits, Exhibits 45 and 49, and the handwritten notes of Sue Skelly (who conducted an interview with Mr. Rodriguez at the behest of O'Dowd), Exhibit 71.  Intel has moved to strike portions of the affidavits.  The motion will be granted as discussed below.

Camille Chavez, whose Affidavit is attached as Exhibit 45,  worked at Intel from 1994 to 2000.  Paragraph 2 states that Mr. Rodriguez did not make eye contact with her but he did with males.  She states he was "downright demeaning toward me during a phone conference." She concludes, "I believe Mr. Rodriguez discriminates against women based on gender."  Exhibit 45, ¶ 2.  Intel argues that Ms. Chavez's failure to give the specific factual basis for her conclusion that Mr. Rodriguez was demeaning requires that portion to be stricken, as well as her conclusion of discrimination because it is based on her "belief."  The court agrees that the failure to state the facts underlying the "demeaning" statement requires that sentence to be stricken.  Ms. Chavez's belief of discrimination, however, will not be stricken because it merely represents her personal opinion.

Intel also moves to strike ¶ 3 of the Chavez Affidavit, which purports to show a discriminatory atmosphere at Intel.  This paragraph will be stricken in its entirety because it is entirely out of context: no date is given, no individuals are identified, and there is no foundation for the allegations contained therein.

Amy Holder, whose Affidavit is attached as Exhibit 49, is another former Intel employee.  She relates two incidents with Mr. Rodriguez.  One concerns an employee about whom Ms. Holder expressed concerns because he had received a warning from another supervisor about time-card fraud and Ms. Holder wanted to take some unidentified "corrective action" against him but was dissuaded by Mr. Rodriguez because the individual was an Hispanic male.  ¶¶ 5-6.  Ms. Holder also recounts that Mr. Rodriguez told her she would lose credibility if she displayed emotion.  When she told him that she had seen male supervisors raise their voices he said that behavior was not appropriate for women.  ¶ 7.

11

Intel moves to strike on the ground that the paragraphs contain hearsay and no date is given for these allegations; thus, materiality cannot be determined.   Intel's motion is denied.   But even considering Ms. Holder's statements, the incidents complained of occurred  when Ms. Holder was a supervisor, between 1994 and 1996.  Ms. Holder does not offer testimony that females were routinely treated differently from males; she merely offers one comment about one male; without more, that is not evidence that raises an inference that Intel's reasons for not placing O'Dowd in a managment position were pretextual.  So too her recollection that Mr. Rodriguez told her she would lose credibility if she displayed emotion and that raising her voice at subordinates was not appropriate behavior for a woman.  Even if true, this comment does not support an inference of pretext.

Finally, Exhibit 71 to O'Dowd's Opposition Memorandum contains Sue Skelly's notes of an interview with Roger Rodriguez.  Sue Skelly conducted an investigation at O'Dowd's request after O'Dowd failed to make "Staff Plus One."   O'Dowd cites selected phrases of these notes as evidence of sex discrimination.  Viewed in context, however, the notes indicate one individual's reasons for not believing that O'Dowd was management material.  He found her unable to separate the personal from work-related issues.  He found her to be a poor communicator with poor writing skills.  These are exactly the issues that O'Dowd had been advised of in all of her performance reviews by all of her supervisors, both men and women.  According to Skelly's notes he used words such as "left-wing" and "vegetarian," but contrary to O'Dowd's assertions  these terms, even if meant disparagingly, are *not* gender specific.  She makes much of his use of the term "scattered," but read in context he called her "undisciplined, forgetful, absent-minded,

scattered."  Again, these are not gender specific terms.  Indeed, Rodriguez's assessment that O'Dowd was undisciplined, etc. would support Intel's business judgment that O'Dowd was not ready to move up in the management hierarchy.

The court has reviewed every document submitted by O'Dowd in support of her sex discrimination claim, whether or not discussed herein.  Even assuming that she established a prima facie case, she has failed to present evidence that Intel's proffered reason for the employment decision was pretextual; *i.e.*, unworthy of belief.  *Randle*, 69 F.3d at 450.  Viewed in the light most favorable to O'Dowd, the nonmoving party, the evidence she submits does not establish any nexus between the allegedly discriminatory comments or conduct and Intel's business judgment not to place her in Staff Plus One.

As enunciated in *Reeves*, the employer is entitled to judgment if the record conclusively shows that the employer had a nondiscriminatory reason for the employment decision.  -- U.S. --, 120 S.Ct. at 2109.  The record herein shows that O'Dowd was one of many individuals competing for a finite number of positions.  Her employment record showed she was deficient in certain areas and did not rate significantly higher than her peers in others.  Thus, Intel is entitled to summary judgment on O'Dowd's Title VII claim of sex discrimination because she has completely failed to raise an inference of pretext.

II.    RETALIATION

A plaintiff's prima facie case of retaliation requires her to establish (1) she engaged in a protected activity; (2) her employer took adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. *McCue v. Kansas*, 165 F.3d 784, 789 (10th Cir. 1999).  If the plaintiff meets this burden,

the burden of production shifts to the employer to present evidence of a legitimate, nonretaliatory business reason for its decision. *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996).  As with sex discrimination claims, the plaintiff must then show that the reason advanced is pretextual; *i.e.*, unworthy of belief.  *McCue*, 165 F.3d at 789.

O'Dowd asserts two claims of retaliation:  (1) she was not offered a managerial position in March, 1999 in retaliation for filing an EEOC charge in May, 1998; and (2) five supervisors or managers  harassed her for her complaints of sex discrimination.  Each will be addressed in turn.

1.      Failure to obtain Group Leader position

After the 1997 reorganization, O'Dowd filed a charge with the EEOC in May, 1998. In March, 1999, O'Dowd claims she was denied a Diffusion Group Leader position due to the EEOC filing nine months' previously.  O'Dowd did not apply for this position, but claims that she "was misled as to the place it would be posted" and the person in charge of hiring, Sheri Wible "was aware of O'Dowd's interest in the position."  Response Memorandum, ¶ 66. Ms. Wible decided to make the position temporary (one-year) and hired an individual from Intel in Israel.  O'Dowd claims this reason is pretextual.

O'Dowd only addresses this claim in her "Disputed and Material Facts" section and does not argue her claim in the Opposition Memorandum.    Based on the record presented,  O'Dowd has failed to show an adverse employment action.  An employer retaliates against an employee when it takes adverse action which affects the employee's "terms and conditions of employment."  *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1995 n.4 (10th Cir. 1977).  An employer's knowledge that an employee is interested in a

position, but for which the employee does not apply, does not constitute an adverse employment action when that employee does not get the job.[6]

Even assuming that O'Dowd has made a prima facie case, the record evidence presented does not support an inference of pretext. Although O'Dowd compares herself to a male who applied for the position (and did not receive it), she fails to show the court that the individual who was transferred from Israel was somehow unqualified.[7] In short, O'Dowd merely argues that Intel made a bad business decision; pretext may not be inferred from a bad business decision.

2. Systematic harassment

O'Dowd contends that five supervisors or managers engaged in "a pattern of systematic harassment which began within weeks of her first verbal complaint that disparate treatment had a role in her non-placement during the 1997 reorganization." Opposition Memorandum at 48. (O'Dowd continues to refer to her lack of placement in the

---

[6] Intel is correct when it argues that the nine-month gap between the protected activity and the alleged adverse action does not support causation. But the court construes O'Dowd's claim to mean that the new Group Leader position was Intel's first opportunity to retaliate. *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).

[7] In support of pretext, O'Dowd offers the Affidavit of her husband, Reggie Nepomuceno, and a former Intel employee, Kathy Kent. Exhibits 25 & 81, respectively, to Opposition Memorandum. Mr. Nepomuceno gives his opinion that transferring an individual from Israel to New Mexico for a one-year temporary assignment was unusual. His opinion is countered by the Affidavit of Sheri Wible, the individual who made the decision. *See* Intel's Reply Memorandum, Exhibit B-1 thereto. Intel moved to strike Mr. Nepomuceno's Affidavit because it lacks foundation; *i.e.*, Mr. Nepomuceno is not a manager and his opinion is in reality nothing more than his opinion that Ms. Wible made a bad business decision. Intel also moves to strike Ms. Kent's affidavit on the ground that Ms. Kent left Intel 10 months prior to the 1997 reorganization. Both Affidavits will be stricken for the grounds asserted.

1997 reorganization and her failure to be placed in the Group Leader position discussed in paragraph 1, *supra*.  The court has already ruled on those positions.)  As evidence, O'Dowd references unsubstaniated complaints about her, a conflict of interest in the investigation of her complaint, and the failure of a manager to tell her she was being considered for a position.  These claims do not constitute adverse employment action.

"'Retaliatory conduct other than discharge or refusal to rehire is . . . proscribed by Title VII only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' or adversely affect[s] his [or her] status as an employee.'"  *Sanchez v. Denver Public Schools*, 164 F.3d 527, 533 (10th Cir. 1998) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)) (ellipses and brackets in original).

This case is similar to *Sanchez* and *Robinson*, *supra*, in which the employees claimed retaliation and cited unsubstantiated oral reprimands, derogatory comments, and the like as the adverse employment action.  *Sanchez*, 164 F.3d at 532-34; *Robinson*, 120 F.3d at 1300-01; *see also Robinson*, 120 F.3d at 1300 n.15 (citing additional cases).  In both of those cases the court found that plaintiffs' employment status had not been affected and thus was not actionable:  "It follows that 'not everything that makes an employee unhappy' qualifies as retaliation, for '[o]therwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'"  *Id.* at 1300 (citations omitted).

O'Dowd makes no claim that her employment status was affected or impaired.  She alleges that one manager "deleted" his invitation for her to apply for future group leader positions in January, 1988 (four months prior to her filing the EEOC charge), but that

allegation is too illusory to constitute an adverse employment action.  An invitation to apply is not a job promise and the invitation was never given; thus nothing was taken away. "Gratuitous promises do not form part of the terms and conditions of employment." *Richmond v. Oklahoma University Bd. of Regents*, 162 F.3d 1174, 2000 WL 747093, **3 n.4 (10th Cir. 1998) (unpublished; copy attached).  O'Dowd has failed to make a prima facie case of retaliation and thus, summary judgment is entered in favor of Intel.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Intel Corporation's Motion to Strike Affidavits and Portions of Affidavits [Doc. 126] is granted in part and denied in part as stated herein;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Intel's Motion for Summary Judgment [Doc. 119] is granted and this case is dismissed with prejudice.

IT IS SO ORDERED.

Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)

FOR THE PLAINTIFF:          Pia Gallegos, Esq.

FOR THE DEFENDANT:          Mary Woodward, Esq.